**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| NANETTE COLE AND BRUCE COLE,    ) | |
|                     ) | |
|        Appellants,     ) | |
|                     ) | |
| v.                        ) | No. 2:16-cv-04143-NKL |
|                     ) | |
| BRUCE E. STRAUSS, TRUSTEE,    ) | |
|                     ) | |
|        Appellee.      ) | |

**ORDER**

This appeal arises out of an adversary proceeding under title 11 of the United States Code.[1] Appellants Bruce Cole and Nanette Cole argue that the Bankruptcy Court should have advised them of their right to have the proceedings heard by an Article III judge; the Bankruptcy Court did not have authority to enter orders concerning the proceeds of the sale of their residence, and requiring them to dismiss a lawsuit they had filed in California; they should not have been held in contempt; and a third party should have been required to file a separate adversary proceeding. Bruce Cole also moves to adopt Nanette Cole's appeal brief. Doc. 15. The motion is granted. The Court affirms.

**I.      Statement of Facts**

Bruce Cole was the president and CEO of Mamtek U.S., Inc., and Nanette Cole is his wife. On December 15, 2011, several creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against Mamtek. Bruce Strauss was appointed Trustee of the Debtor's bankruptcy estate.

In May 2012, the Trustee filed an adversary proceeding against the Coles in which he

---

[1]      The Honorable Dennis R. Dow, United States Bankruptcy Court for the Western District of Missouri.

sought, among other things, avoidance of fraudulent and preferential transfers. The Trustee also moved for a temporary restraining order and preliminary injunctive relief, to prevent the Coles from disposing of the proceeds of the sale of their residence in Beverly Hills, California. Based upon Bruce Cole's representation that the property would not be sold before June 27, 2012, the Bankruptcy Court denied the Trustee's request for a TRO and set a hearing on the request for a preliminary injunction for June 22, 2012.[2]

On June 12, 2012, the Trustee filed a renewed motion for TRO because he had been informed by the broker's counsel that the sale of the real property could close as early as June 15.[3] With the Coles' consent, the Bankruptcy Court entered a TRO on June 15. The order provided, in relevant part:

> 1.  All proceeds of the sale of the residence of defendants Bruce and Nanette Cole ... shall be paid to Escrow of the West [a California escrow company] ....
>
> 3.  The Escrow Agent shall disburse the proceeds of the Residence as follows: ...
>     (b)  to any governmental entities or other taxing authorities in an amount sufficient to satisfy any taxes or fees relating to the Residence or to the sale of the Residence....
>
> 4.  All proceeds of the sale of the Residence in excess of the amounts set forth in paragraph 3 shall be held by the Escrow Agent pending further order of the United States Bankruptcy Court for the Western District of Missouri.
>
> 5.  Any attempt by Bruce or Nanette Cole to enter into any agreement or make any instruction that proceeds received hereafter from the sale of the Residence be disbursed to any person or entity other than the Escrow Agent shall be a direct violation of this Order. ….

---

[2] At the time, the Coles were represented in the adversary proceeding by attorneys Neil Sader and Bradley McCormack.

[3] Bruce Cole filed a declaration in the Bankruptcy Court on June 14, 2012, stating that it was the buyers who had suggested changing the closing date. Bankr. Doc. 51.

Bankr. Doc. 55.[4]

On June 18, 2012, the Bankruptcy Court entered another order, stipulated to by the Trustee and the Coles. It provided, in relevant part, that: (1) the June 15, 2012 order would "remain in force and effect until final judgment is entered in this adversary proceeding;" and (2) Escrow of the West would retain the net proceeds of the sale of the real property "until final judgment is entered in this adversary proceeding, at which time the Court shall enter an order directing the disposition of such proceeds." Bankr. Doc. 61. After entry of the June 2012 orders, Escrow of the West continued to hold the proceeds of the sale.

In December 2012, the Bankruptcy Court granted a motion to withdraw filed by the Coles' attorneys, Neal Sader and Bradley McCormack, and the Coles subsequently proceeded *pro se* in the adversary proceeding

On August 29, 2013, the Bankruptcy Court granted the Trustee summary judgment on Counts I and III of the adversary complaint, concerning fraudulent and preferential transfers.[5] The Trustee filed a motion in the Bankruptcy Court on October 16, 2013, asking that the June 2012 orders be modified to direct Escrow of the West to transfer the proceeds to the Trustee so the proceeds could be credited against the Trustee's judgment. The Coles filed an objection in the Bankruptcy Court to the Trustee's motion to modify, on the bases that the judgment was not final in view of the counts still pending in the adversary proceeding and that the proceeds should be used to pay their capital gains taxes relating to the sale of the real property.

___

[4] "Bankr. Doc." refers to filings in adversary proceeding in the Bankruptcy Court below, case no. 12-02009-drd.

[5] The Coles appealed to the District Court. *See* case no. 2:13-cv-04200-NKL. This Court entered judgment against both of the Coles on Count I, avoidance of a $904,167 fraudulent transfer, and against Bruce Cole on Count III, avoidance of a $360,000 preferential transfer. The Eighth Circuit Court of Appeals affirmed on July 6, 2015. *See Strauss v. Cole*, 608 F. App'x 438 (8th Cir. 2015).

At some point, the Coles hired Gary Mobley, a California attorney, to assist them in having capital gains taxes paid to the IRS and the California Franchise Tax Board out of the proceeds of the sale of the real property. Mobley did not enter an appearance on behalf of the Coles in the adversary proceeding. But he sent a letter on November 13, 2013 to Escrow of the West, stating that he "represent[ed]" the Coles with respect to the sale proceeds and demanding that payment be made from the proceeds to the IRS and the California Franchise Tax Board, based on the Bankruptcy Court's June 2012 orders. Bankr. Doc. 267, Exhibit A. Through December 17, 2013, Mobley and Escrow of the West's attorney, Daniel Krishel, exchanged numerous letters and emails regarding the Coles' demand for the payment and Escrow of the West's position that such a transfer was unauthorized. Bankr. Doc. 267, Exhibits B-E. The Coles also filed a supplemental brief in the Bankruptcy Court in opposition to the Trustee's motion to modify, but did not disclose the exchanges Mobley was having with Escrow of the West's attorney. Bankr. Doc. 231.

On December 20, 2013, the Bankruptcy Court denied the Trustee's motion to transfer the proceeds, holding that transfer was premature in view of the other pending claims in the adversary proceeding. Bankr. Doc. 239. The Bankruptcy Court added that if circumstances changed, it would consider a motion to modify its orders regarding the proceeds. The Bankruptcy Court also expressly acknowledged the argument the Coles had made in response to the Trustee's motion, *i.e.*, "that taxes related to the sale of the Property are due and owing, and are to be disbursed by the Escrow Agent from the Funds," and ordered:

> [The Coles'] assertion in response to the Trustee's motion does not substitute for a motion requesting release of a portion of the Funds. The Court agrees with the Trustee's position that, *if the Defendants claim that the Funds should be used to pay their capital gain tax liability, they must submit a formal request to the Court for consideration,* asserting all the factual and legal bases for that

claim, to which the Trustee will have the opportunity to respond. The Court will then decide the matter, holding a hearing, if necessary.

Bankr. Doc. 239, p. 4 (emphasis added).

Krishel sent an email to Mobley on January 6, 2014 about the Bankruptcy Court's order, and stating that the Coles would "need to make a motion to have specific funds released and to whom they are to be released." Bankr. Doc. 267, Ex. F. Mobley responded on January 7, 2014:

> The bankruptcy court decision does nothing to change my clients' position, which I believe I have clearly articulated to you. Specifically, your client is holding approximately $900,000 of my clients' money in an escrow account, the bankruptcy court has ordered Escrow of the West to use these funds to pay to the IRS and Franchise Tax Board ("FTB") to pay the capital gains taxes incurred in the sale of the residence, and my clients have specifically requested that your client do so. Under these circumstances, your client has no right to refuse this request or, at a minimum, interplead these funds into a California court.

*Id.*, Ex. G. Mobley also said Escrow of the West had "been stalling" him pending the Bankruptcy Court's decision regarding the disbursement motion and that the Bankruptcy Court had ordered Escrow of the West to pay the capital gains taxes. *Id.* Mobley threatened to sue Escrow of the West if it did not pay the taxes.

On February 10, 2014, Mobley filed a lawsuit on behalf of the Coles in the Superior Court of California, Orange County, against the Trustee, Escrow of the West, the State of California, and the United States of America concerning the proceeds of the sale of the real property. The first count sought a declaration that Escrow of the West should disburse $175,000 of the funds to the Coles as a homestead exemption, and remaining funds to the United States and the State of California to satisfy the taxes. The second count alleged Escrow of the West had breached a fiduciary duty when it did not comply with the Coles' demands to pay over the funds as the Coles had requested. Bankr. Doc. 267, Exhibit H.

5

The Trustee filed an emergency motion on February 25, 2014 in the adversary proceeding before the Bankruptcy Court, to halt the California litigation and asking for modification of the Bankruptcy Court's prior orders and an expedited hearing. The Coles filed a response in the Bankruptcy Court the following day, representing that there was "no emergency or imminent threat of funds being disbursed." Bankr. Doc. 248, p. 2. The Coles filed another response in the Bankruptcy Court on March 4, 2014, arguing that the Bankruptcy Court did not have jurisdiction over the funds held by Escrow of the West, and that they had merely brought the California lawsuit to force Escrow of the West to comply with the Bankruptcy Court's orders. Bankr. Doc. 259, pp. 2 and 10.

The Bankruptcy Court held a hearing by telephone on the emergency motion on March 5, 2014.[6] The Bankruptcy Court found that the Coles' filing of the California lawsuit was "a clear violation of the Barton Doctrine[7]," Bankr. Doc. 265, pg. 9, and that the Coles had "clearly violated this Court's order and are actively trying to circumvent it in at least several respects," *id.*, p. 34. The Bankruptcy Court also cited both the November 13 letter from Mobley, as well as the California lawsuit, as evidence of the Coles' attempts to circumvent and violate its order. *Id.*, p. 35. The Bankruptcy Court further found that by filing the California lawsuit, the Coles were seeking in California "an interpretation of my order. The appropriate place for an interpretation of this Court's order is this Court. I also note that they're essentially asking the California court to interpret my order, incredibly, without even having advised the California court of the existence of my order." *Id.,* p. 36. Describing the Coles' conduct as

---

[6]     Both of the Coles participated in the call.

[7]     Established in *Barton v. Barbour,* 104 U.S. 126 (1881), the *Barton* doctrine "requires that a party obtain leave from the bankruptcy court before bringing an action in another forum against the trustee for acts done in the trustee's official capacity." *Alexander v. Hedback*, 718 F.3d 762, 767 (8th Cir. 2013).

Case 2:16-cv-04143-NKL   Document 20   Filed 01/03/17   Page 6 of 26

"disingenuous at least and deceitful at most," the Bankruptcy Court noted that while litigating the Trustee's motion to transfer the proceeds, the Coles never advised the Bankruptcy Court that they were actively seeking to have the proceeds paid to the taxing authorities. *Id.* The Bankruptcy Court granted the Trustee's emergency motion and ordered Escrow of the West to transfer the funds to the Tennessee bank account of the Estate of Mamtek U.S. by 5 p.m. the same day, which Escrow of the West did. The Bankruptcy Court further ordered the Trustee "not [to] dispose of or transfer any of the Funds until all claims in the above-captioned adversary proceeding are finally determined and unappealable." Bankr. Doc. 262.

On March 11, 2014, Escrow of the West filed a motion to dismiss in the California lawsuit, attaching copies of the Bankruptcy Court's March 5, 2014 hearing transcript and order on the emergency motion. Bankr. Doc. 267, Exhibit I. The Coles filed suggestions in opposition in the California lawsuit, arguing that the Bankruptcy Court had ordered Escrow of the West to pay their taxes. Bankr. Doc. 267, Exhibit J. The Hon. Derek W. Hunt held a hearing on the motion on April 22, 2014. Judge Hunt denied Escrow of the West's motion to dismiss, but stayed the case. Although Mobley argued that the Bankruptcy Court's June 2012 orders' reference to the "taxes" should be read expansively and the Coles were therefore entitled to immediate payment of the capital gains taxes from the sale proceeds, Judge Hunt disagreed. He opined that the order was merely referring to property taxes, but that in any event, it was up to the Bankruptcy Court to interpret and enforce its own order. Judge Hunt found the Coles had "misinform[ed] [him] about the background [of the bankruptcy proceedings]." Bankr. Doc. 267, Exhibit M, p. 9. He concluded that the "money [was] within the bankruptcy court's jurisdiction" and it was not "sensible [of the Coles] to think [they] could go forward and adjudicate against Escrow of the West, which has transferred, or in some fashion put that money—by virtue of a bankruptcy court

7

order—in the hands of" the Trustee. *Id.*, pp. 11-12. Judge Hunt also noted that the Bankruptcy Court had invited the Coles to file a motion in the Bankruptcy Court if they felt the funds should be used to pay the capital gains taxes, but the Coles had not taken the Bankruptcy Court up on the invitation. Judge Hunt stated that he was "not going to step on Judge Dow's feet." *Id.,* p. 13-15.

The Coles did not file a motion in the Bankruptcy Court concerning payment of taxes. They continued to litigate the California case and it was reassigned from Judge Hunt to the Hon. Randall Sherman on August 9, 2014. On December 5, 2014, Judge Sherman held a hearing, vacated the stay previously entered by Judge Hunt, and set a case management conference for January 23, 2015 with a trial to follow.

On January 20, 2015, Escrow of the West filed a motion in the Bankruptcy Court asking for findings that Escrow of the West had complied with the Bankruptcy Court's orders and that the Coles were in contempt. Bankr. Doc. 267. Mobley and the Coles filed separate suggestions in opposition. Docs. 274 and 274. The Bankruptcy Court held a hearing on Escrow of the West's motion on March 11, 2015. Mobley was present in person and Nanette Cole participated by telephone. After hearing argument, Judge Dow made oral findings of fact and conclusions of law under Bankruptcy Rules 7052 and 9014(c). Judge Dow found that Escrow of the West had complied in all material respects with the Bankruptcy Court's orders and that "as of February 6, 2014, the Coles and their counsel [Mobley] were in contempt of this Court's order of 12/20 by filing the proceeding in the State of California requesting precisely the determination that this Court told the Coles in my order of 12/20 they could only get here." Bankr. Doc. 283, p. 35. Judge Dow ordered the Coles to dismiss the California case and stated that they would be fined $100 per day until they had done so. *Id.*, pp. 35-36. Judge Dow also ordered Escrow of the West's attorney to prepare a written order incorporating his oral ruling. *Id.*, p. 46. Although

8

Judge Dow had not in his oral ruling indicated whether the California lawsuit should be dismissed with or without prejudice, the written order he subsequently entered provided that it should be dismissed with prejudice. Bankr. Doc. 281.

The Coles filed a motion to dismiss with prejudice in the California case on March 13, 2015 and the case was dismissed with prejudice the same day.[8] Nothing in the record reflects that the Coles were directed to pay or paid the $100 daily fine after they dismissed the case.[9]

On February 17, 2016, the Trustee filed a motion in the Bankruptcy Court adversary proceeding to dismiss the remaining counts. The Coles filed a "Response," stating they did not object to dismissal of the counts "as the only relief specified in the motion," but that they did object if the Trustee wanted relief beyond what was specified, stating that the Trustee should be required to file a separate motion. Bankr. Doc. 303. The Bankruptcy Court granted the Trustee's motion to dismiss on March 11, 2014, ordering:

> Trustee's Motion to Dismiss Adversary Proceeding Counts II, IV, V, VI, VII, VIII And IX Only Of The First Amended Complaint filed by Bruce E. Strauss, Trustee is Granted. The Court has reviewed the responses filed by both defendants. Neither states any basis for refusal of the requested relief which benefits the defendants and which they essentially say they do not oppose. While concerns are expressed about so-called "other relief" no relief other than dismissal of the remaining counts of the amended complaint is sought. None of the litany of other complaints (many of which have been previously raised and rejected) is even remotely relevant to the relief requested by plaintiff in the motion.

---

[8] The Court takes judicial notice of the dismissal. *See Hood v. United States,* 152 F.2d 431, 535 (8th Cir. 1946) (district courts may take judicial notice of proceedings in other courts).

[9] Mobley and the Coles separately appealed the Bankruptcy Court's contempt order to the U.S. District Court, Western District of Missouri, the Hon. Stephen R. Bough, and the appeals were consolidated. *See* U.S. District Court, W.D. Mo. case no. 2:15-cv-04057-SRB. Judge Bough held that the contempt order was interlocutory and not ripe for appeal with respect to the Coles, in view of the fact that the adversary proceeding was still pending, and declined to grant the Coles leave to appeal. *In re Mamtek U.S., Inc.,* 2015 WL 5604418, at *3-4 (W.D. Mo. 9/23/2015). Judge Bough affirmed with respect to Mobley. *Id.* at *4-6.

Bankr. Doc. 304.

The Coles filed motions in the Bankruptcy Court under Bankruptcy Rule 9023 to alter or amend, and to clarify. Bankr. Docs. 306 and 307.[10] They asked the Bankruptcy Court to clarify the process by which they could seek an order directing the Trustee to use certain funds in his possession to pay their taxes, and to order that before the Trustee disbursed the funds, the Trustee must file a motion seeking authorization to do so. *Id.* The Trustee responded that the issue of clarity of the process for obtaining an order on payment of taxes had already been litigated, the process was so clear that the Coles and their attorney had in fact been sanctioned for violating it, and the Western District had upheld the sanction in the attorney's appeal. The Trustee added that no order was necessary with respect to his obligations to file any motion regarding disbursement, inasmuch as the Bankruptcy Code and Rules already governed such activities. Bankr. Doc. 309.

On May 4, 2016, the Bankruptcy Court denied the Coles' motions. Bankr. Doc. 312. The Bankruptcy Court held that the grounds for the Coles' motion were unclear. It noted that although the Coles asked for clarification about the process for determining the appropriate disposition of the proceeds held by the Trustee of the sale of their residence, and complained that the Bankruptcy Court had overlooked a similar request for clarification in their response to the motion to dismiss, the issue was irrelevant to the Trustee's motion to dismiss the remaining counts. The Bankruptcy Court further noted it had already made "abundantly clear" what the Coles must do if they wanted a determination regarding payment of taxes from the sale of the

---

[10]     The Coles filed their Rule 9023 motions in paper format. Nanette Cole's Rule 9023 motion was delivered to the Bankruptcy Court on March 28, 2016, or seventeen days after entry of the dismissal order. Bruce Cole, who is incarcerated, deposited his Rule 9023 motion in the prison mail on March 25, 2016, or fourteen days after entry of the dismissal order, and it was delivered to the Bankruptcy Court on March 28, 2016.

Case 2:16-cv-04143-NKL   Document 20   Filed 01/03/17   Page 10 of 26

proceeds. *Id.*, p. 2. Finally, the Bankruptcy Court noted that Rule 9023 is addressed to mistakes of law or fact, but the Coles had not suggested that anything in the order on the motion to dismiss reflected a mistake of law or fact. The Bankruptcy Court concluded:

> [The Coles] have been told repeatedly that they must file a motion setting forth the arguments and authorities that support their request and serve it on the Trustee. There is no need for any "clarification". Despite that repeated advice, the [Coles] have failed to do so. This Court has no intention of raising the issue on its own motion.

*Id.*, p. 3.

The Coles appealed to the District Court.[11]

## I.     Jurisdiction

The Trustee and Escrow of the West argue that this Court lacks jurisdiction because the Coles filed their Rule 9023 motions to alter, amend, and clarify too late, and their notices of appeal were therefore filed too late. As discussed below, the Court agrees with respect to Nanette Cole's motion and notice of appeal, but concludes Bruce Cole's motion and notice of appeal were timely filed.

A Rule 9023 motion must be filed within 14 days of entry of the judgment or order being challenged, and that time limit cannot be extended. *See* Fed. R. Bankr. P. 9006(b)(2); *In re Ellis,*, 72 F.3d 628, 631 (8th Cir. 1995). A notice of appeal under Bankruptcy Rule 8002 must be filed within 14 days of entry of the judgment or order being appealed, except that the 14-day limit is tolled when a party "timely files" a motion under Rule 9023. Fed. R. Bankr. P. 8002(a) and (b). As relevant here, a "paper is filed by delivering it … to the clerk" of court. Fed. R. Bankr. P. 7005 (incorporating Fed. R. Civ. P. 5). Accordingly, if a Bankruptcy Rule 9023

---

[11]     The Coles' notices of appeal were delivered, in paper format, to the Bankruptcy Court on May 18, 2016, or fourteen days after denial of the Coles' Rule 9023 motions.

motion, in paper format, is delivered to the clerk of court more than 14 days after the entry of the judgment or order, the motion has not been timely filed, and Rule 8002's 14-day limit in which to appeal that judgment or order therefore is not tolled.

Here, the Bankruptcy Court granted the motion to dismiss on March 11, 2016. Nanette Cole delivered her Rule 9023 motion to the Bankruptcy Court clerk on March 28, 2016, or 17 days later, beyond the 14-day window for filing it. Accordingly, the late filing of her Rule 9023 motion did not toll the time to file a notice of appeal under Bankruptcy Rule 8002, and her notice of appeal—filed two months after the dismissal order—was filed too late to challenge the Bankruptcy Court's dismissal order and underlying rulings.

However, the analysis is different with respect to Bruce Cole because he is incarcerated. The Bankruptcy Rules expressly incorporate the prison mailbox rule, an exception to filing by delivery to the clerk, with respect to notices of appeal. Under Bankruptcy Rule 8002(c), when an "inmate confined in an institution files a notice of appeal from judgment, order, or decree of a bankruptcy court, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing." Bankruptcy Rule 8002 does not expressly state whether the prison mailbox rule also applies to the filing of motions that can toll the running of the time to file a notice of appeal, such as motions to alter or amend under Bankruptcy 9023, and the Eighth Circuit has not decided whether the prison mailbox rule applies to the filing of bankruptcy motions. *In re. Bourgeois,* 488 B.R. 622, 626 (8th Cir. Bankr. App. Panel 2013) (recognizing the open question).

But the Bankruptcy Rules are generally interpreted the same way as other, similar Federal Rules. *See In re Lindley*, 216 B.R. 811, 815 n.7 (Bankr. N.D. Ill. 1998), and *In re Watson*, 1977 WL 1327, at *2 (S.D. Ga. Dec. 8, 1977). Bankruptcy Rule 8002 is modeled after Fed. R. App.

P. 4, which similarly includes the prison mailbox rule for notices of appeal, and a provision for motions tolling the time to file a notice of appeal such as motions to alter or amend under Fed. R. Civ. P. 59.[12]   In *United States v. Duke*, 50 F.3d 571, 575 (8th Cir. 1995), the Eighth Circuit held that the prison mailbox rule applies "with equal force" to the filing of notices of appeal under Appellate Rule 4 and to motions "which, under [the rule], toll[] the time for filing of a notice of appeal."   The Eighth Circuit relied on the rationale of *Houston v. Lack,* 487 U.S. 266, 271-72 (1988), in which the Supreme Court established the prison mailbox rule, recognizing that a prisoner's "control over the processing" of his filings "necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities[.]"   This Court sees no reason to interpret Bankruptcy Rule 8002 differently than Appellate Rule 4 with respect to application of the prison mailbox rule.

Accordingly, the Court will apply the prison mailbox rule to the filing of Bruce Cole's Bankruptcy Rule 9023 motion.   He deposited his Rule 9023 motion in the prison mail on March 25, 2016—the 14th day after entry of the order of dismissal.   By operation of the prison mailbox rule, it was therefore timely filed and operated to toll the time for him to file his notice of appeal.   The notice of appeal, which was deposited in the prison mailbox and reached the clerk within 14 days of the denial of the Rule 9023 motion, was timely filed as well. Accordingly, the Court has jurisdiction of Bruce Cole's appeal.

## II.    Issues on Appeal

Cole raises nine issues on appeal:

> 1.    Did the Bankruptcy Court err in not advising [the Coles] of their right or opportunity to have the proceedings heard before an Article III judge?

---

[12]    Bankruptcy Rule 9023 expressly incorporates Fed. R. Civ. P. 59.

2.      Does the Bankruptcy Court have jurisdiction over the proceeds from the sale of [the Coles'] residence in California?

3.      Did the Bankruptcy Court err in refusing to consider issues of tax payments and homestead raised by [the Coles] pursuant to prior orders and ordering transfer of proceeds from the sale of [the Coles'] California residence?

4.      Should issues arising in the Adversary Proceeding and still pending clarification or subject to Motions or Orders by the Bankruptcy Court in this Adversary Proceeding, including but not limited to orders directing the payment of any taxes relating to the sale of Defendants' personal residence and homestead provisions, be ruled on by the bankruptcy court before proceeding with this appeal?

5.      Was it error for the bankruptcy court to order dismissal of an entire California Action which included a cause of action and issues of California law other than the Bankruptcy Court orders?

6.      Did the Bankruptcy Court have authority to issue a final adjudication of all issues pending before a California court or order a dismissal with prejudice of an entire California action when necessary parties to the adjudication were not before it and pleadings were still subject to amendment under state law?

7.      Did a third-party Escrow Company have standing to seek the relief granted by way of motion in this adversary proceeding?

8.      Was it error for the bankruptcy court to add "with prejudice" to its Order dismissing the entire California action only upon request of the Movant a day after the Order was announced at the hearing, dismissal with prejudice was never requested or noticed by the Movant, never mentioned at the hearing, and thereafter added to the Order without notice to these Defendants?

9.   Did the filing of a California action against the Escrow Company retained by Defendants for the sale of the personal residence in California prior to this Adversary Proceeding constitute contempt by these Defendants of the Bankruptcy Court's Order of December 20, 2013?

Doc. 14.[13]

## III.   Standard of Review

Issues 1 through 8 are reviewed under a *de novo* standard.  *See In re Martin,* 140 F.3d 806, 807 (8th Cir. 1998) (a bankruptcy court's legal conclusions are reviewed *de novo*).

Issue 9, the contempt finding, is reviewed for abuse of discretion.  *See Indep. Fed'n of Flight Attendants v. Cooper,* 134 F.3d 917, 920 (8th Cir.1998) (the grant or denial of a contempt order is reviewed for abuse of discretion, but an order finding contempt is reviewed "more searchingly").

## IV.   Discussion

### A.   Issue 1, whether reversal is required where the Bankruptcy Court did not advise Cole of the "right or opportunity to have the proceedings heard before an Article III judge[.]"

Cole claims that the Bankruptcy Court erred in not advising him of his "right or opportunity to have the proceedings heard before an Article III judge[.]"  Doc. 14, pp. 2-7 (citing *Stern v. Marshall,* 131 S.Ct. 2594 (2011), *Executive Benefits Ins. Agency v. Arkison,* 134 S.Ct. 2165 (2014), and *Wellness Intern. Network, Ltd. v. Sharif,* 135 S.Ct. 1932 (2015)).  Emphasizing the Supreme Court's May 2015 decision in *Wellness,* he argues that the Bankruptcy Court did not have authority to adjudicate the claims against him in the adversary proceeding, absent notification to Cole of the right to refuse adjudication by the Bankruptcy Court.  As discussed below, the Court concludes the issue lacks merit.

---

[13]   "Doc." refers to filings in the appeal currently before this Court.

In *Stern,* the Supreme Court held that Article III prevents bankruptcy courts from entering final judgment on claims that seek only to "augment" the bankruptcy estate and would otherwise "exis[t] without regard to any bankruptcy proceeding." 131 S.Ct. at 2614, 2618. In *Executive Benefits,* the Supreme Court held that when the Constitution does not permit a bankruptcy court to enter final judgment on a bankruptcy-related claim, the bankruptcy court may nevertheless issue proposed findings of fact and conclusions of law to be reviewed *de novo* by a district court. 135 S.Ct. at 2170. Finally, in *Wellness* the Supreme Court held that Article III of the United States Constitution permits bankruptcy judges to adjudicate a claim that would otherwise fall under the *Stern* prohibition, with the parties' knowing and voluntary consent, and that such consent need not be expressly given. 135 S.Ct. at 1944-48.

In his previous appeal to this Court in case no. 2:13-cv-04200-NKL, Cole similarly argued that reversal was necessary because the Bankruptcy Court had not notified him of the right or opportunity to have the proceedings heard before an Article III judge. Noting he had cited no authority, this Court concluded the argument lacked merit. 2014 WL 4055787, at *4-5. At the time of this order, *Stern* and *Executive Benefits* had been decided, but *Wellness* had not been. The Coles appealed to the Eighth Circuit, case no. 14-3302, on September 26, 2014. *Wellness* was decided on May 26, 2015 and a supplemental brief addressing *Wellness* and consent was filed on June 16, 2015, before the Eighth Circuit took the case under submission. The Eighth Circuit summarily affirmed on July 7, 2015, stating it had "review[ed] the record and the parties' arguments" and "conclude[d] that there [was] no basis for reversal[.]" 608 Fed. Appx. 438 (8th Cir. 2015) (citing *Exec. Benefits Ins. Agency v. Arkison,* 134 S.Ct. 2165, 2172-75 (2014)). In short, the issue of knowing and voluntary waiver was before the Eighth Circuit and the Eighth Circuit affirmed. Issue 1 therefore lacks merit.

### B. Issue 2: The Bankruptcy Court's jurisdiction over the proceeds of the sale of the real property.

Cole argues that the Bankruptcy Court lacked jurisdiction over the sale proceeds. He raised the identical issue in his prior appeal before this Court, which concluded he had waived the issue by failing to brief it. 2014 WL 4055787, at *13. A party is not generally permitted to raise, on second appeal, an issue that the party could have raised in a first appeal. *See Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, 737 F.3d 1188, 1194 (8th Cir. 2013) ("For over one hundred years, our court has repeatedly barred parties from litigating issues in a second appeal following remand that could have been presented in the first appeal."); and *Lupo v. R. Rowland & Co.*, 857 F.2d 482, 484 (8th Cir. 1988) (concluding that two attorneys challenging a district court's jurisdiction to impose Rule 11 sanctions against them "waived any objection they may have had regarding" the proper entry of judgment under Fed. R. Civ. P. 58's separate document requirement in a second appeal, because "an [initial] appeal was heard by this court on the merits of the case ... and this issue was apparently not raised by the parties"). The Court sees no reason to permit Cole to raise the issue in this appeal having waived it in the prior one.

Cole argues that this Court must consider the issue because it goes to the Bankruptcy Court's jurisdiction. The issue still lacks merit. This Court will assume for the sake of argument that the Bankruptcy Court's exercise of jurisdiction over the sale proceeds falls under the *Stern* prohibition, *i.e.,* that it is a matter statutorily designated for final adjudication by a bankruptcy court but which the bankruptcy court is constitutionally prohibited from proceeding to finally adjudicate. But Cole knowingly and voluntarily consented to the Bankruptcy Court's exercise of jurisdiction, within the meaning of *Wellness*. 135 S.Ct. at 1944-48. The Supreme Court in *Wellness* explained that "the key inquiry" with respect to consent "is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it and still voluntarily

appeared to try the case' before the non-Article III adjudicator." 135 S.Ct. at 1948 (quoting *Roell v. Withrow,* 538 U.S. 580, 588 at n.5 (2003)). Consent may be express or implied. *Id.* The Supreme Court did not decide whether the defendant in *Wellness* consented to the bankruptcy court's exercise of jurisdiction in an adversary proceeding, because the determination would have been deeply fact bound and of little guidance to litigants or lower courts, given the unique procedural history of the case. *Id.* at 1948-49. But other courts post-*Wellness* have held that parties have impliedly consented when they appeared before a bankruptcy court without objection. *See Mandel v. Jones*, 2016 WL 4943366, at \*5 (E.D. Tex. Sept. 16, 2016) (parties may impliedly consent when a bankruptcy judge hears evidence and testimony related to a claim without objection by the parties) (citing *In re McCollom Interests, LLC*, 551 B.R. 292, 300 (Bankr. S.D. Tex. 2016) ("[T]his Court held two hearings during which two of the Firm's attorneys appeared and gave testimony; and the Firm never objected to this Court's constitutional authority to enter a final order.... If these circumstances do not constitute implied consent, nothing does.")). *See also In re Campbell*, 553 B.R. 448, 452 (Bankr. M.D. Ala. 2016) (concluding that a defendant's failure to appear and defend against claims in an adversary proceeding, despite service of the summons, constituted knowing and voluntary consent to a non-Article III adjudicator within the meaning of *Wellness*) (and cases cited therein).

Here, the Coles consented in June 2012 to the Bankruptcy Court's entry of a temporary restraining order and preliminary injunction regarding transfer of the sale proceeds. Furthermore, notwithstanding their late 2013 appeal to this Court, case no. 2:13-cv-04200-NKL, in which the Coles themselves identified the issue of the Bankruptcy Court's jurisdiction over the sale proceeds, they continued to appear before the Bankruptcy Court to litigate how the sale proceeds would be handled. For example, after the Trustee filed a motion in the Bankruptcy

Case 2:16-cv-04143-NKL   Document 20   Filed 01/03/17   Page 18 of 26

Court in October 2013 asking that the sale proceeds be transferred to him and credited against his judgment, the Coles did not object to the Bankruptcy Court's exercise of jurisdiction. Rather, they argued that the proceeds should be used to pay their capital gains taxes. Similarly, in March 2016 when the Trustee moved to dismiss the remaining counts of the adversary complaint, the Coles again failed to object to the Bankruptcy Court's jurisdiction. They instead asked the Bankruptcy Court to require the Trustee to file a motion for authorization to disburse the sale proceeds. The circumstances of this case easily demonstrate implied consent to the Bankruptcy Court's exercise of jurisdiction.

Issue 2 therefore lacks merit.

**C.    Issue 3:  Requiring the Coles to file a motion for payment of the taxes from the proceeds, and ordering the proceeds transferred to a bank account outside of California.**

Cole argues that according to the June 2012 orders, the capital gains taxes were supposed to be paid from the sale proceeds, and that he and Nanette Cole "attempted to raise and schedule these issues with the bankruptcy court prior to its dismissal of the remaining counts of the Amended Complaint," but the Bankruptcy Court simply would not resolve them. Doc. 14, p. 14.

In a December 2013 order, the Bankruptcy Court explicitly acknowledged the Coles' argument, raised in their response to a motion filed by the Trustee, "that taxes related to the sale of the Property are due and owing, and are to be disbursed by the Escrow Agent from the Funds[,]" an argument the Trustee disputed. Bankr. Doc. 239, p. 4. The Bankruptcy Court ordered:

> [The Coles'] assertion in response to the Trustee's motion does not substitute for a motion requesting release of a portion of the Funds. The Court agrees with the Trustee's position that, if the Defendants claim that the Funds should be used to pay their capital gain tax liability, they must submit a formal request to the Court for consideration, asserting all the factual and legal bases for that

> claim, to which the Trustee will have the opportunity to respond. The Court will then decide the matter, holding a hearing, if necessary.

Bankr. Doc. 239, p. 4.  The first California judge assigned to the Coles' case also urged the Coles to do what the Bankruptcy Court had ordered, *i.e.,* file a motion.  But they never did.

The Bankruptcy Court was authorized to require the Coles to file a motion.  By rule, a request for an order from bankruptcy court must be made by motion.  Fed. R. Bankr. P. 7(b).  More fundamentally, the statutory grant Congress has provided the bankruptcy courts extends to exercising such authority as is necessary or appropriate to accomplish the purposes of the Bankruptcy Code:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  *See also Hale v. U.S. Tr.*, 509 F.3d 1139, 1148 (9th Cir. 2007) (control is necessarily vested in the bankruptcy courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases).  The Coles wanted a particular action taken, for their personal benefit, prior to disbursement of the proceeds.  Instructing them to file a motion, stating factual and legal bases for the relief they wanted, was an orderly means of addressing the issue.  The Bankruptcy Court was vested with ample authority to require them to do so.

Cole argues that the Bankruptcy Court's June 2012 orders were already clear about payment of the capital gains taxes and therefore there was no reason for the Bankruptcy Court to have ordered the Coles to file a motion seeking to have the capital gains taxes paid.  But a bankruptcy court has jurisdiction to interpret and enforce its own orders, *Travelers Indemnity v.*

20

*Bailey,* 537 U.S. 137, 151 (2009), and the Bankruptcy Court here was in the best position to do so, especially given the procedural history it faced in the adversary proceeding, including motions for temporary restraining orders and the consent orders that led to entry of the June 2012 orders, and the litigation filed in the California case concerning its orders.

Cole also suggests that the Bankruptcy Court somehow erred in March 2014 when it granted the Trustee's emergency motion to transfer the funds out of California, to be held in the Tennessee bank account for the Mamtek Estate. Cole's argument is hard to follow. But a bankruptcy court has the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). The Bankruptcy Court's order here, transferring the funds, ensured they were preserved for purposes of satisfying a judgment rendered in the adversary proceeding and was consistent with the provisions of the Bankruptcy Code.

Issue 3 therefore lacks merit.

### D.    Issues 5, 6, and 8:  The Bankruptcy Court's order directing the Coles to dismiss the California lawsuit.

Cole argues the Bankruptcy Court had no authority to order him to dismiss the California lawsuit. The argument fails.

First, the Coles in fact followed the Bankruptcy Court's order and dismissed the California lawsuit with prejudice in March 2015. Although Cole asks for reversal of the order requiring him to dismiss the lawsuit, he does not identify any effect a reversal could have now. The appeal of the order requiring dismissal therefore appears moot. *Minnesota Humane Society v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999) (holding that federal courts cannot issue decisions on moot questions).

Even if it is not moot, however, it fails on the merits. The Bankruptcy Court ordered the

dismissal of the California lawsuit in the course of finding the Coles were in contempt of its prior orders by filing and continuing to litigate the lawsuit. The first count of the California lawsuit sought payment of the taxes from the proceeds of the sale, even though the Bankruptcy Court had explicitly instructed the Coles to file a motion, citing facts and authority, if they wanted that type of relief. The second count, which was integrally related to and predicated upon the first, claimed breach of fiduciary duty against Escrow of the West for failing to pay over the proceeds as the Coles demanded.

"[B]ankruptcy courts have the inherent power to sanction vexatious conduct presented before the court." *Hale v. U.S. Tr.*, 509 F.3d 1139, 1148 (9th Cir. 2007) (citation omitted). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991)). *See also In re Unioil*, 942 F.2d 678, 682 (10th Cir. 1991) (bankruptcy courts unquestionably have power to enforce their own orders). These inherent powers, including the "power to punish for contempt," "reach[] both conduct before the court and that beyond the court's confines." *Chambers,* 501 U.S. at 44. The Bankruptcy Court had inherent power to enter a contempt order.

Separate from its inherent power to punish for contempt, the Bankruptcy Court also has the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). This power includes "the authority to enjoin litigants from pursuing actions in other courts that threaten the integrity of the Debtor's estate." *In re Emergency Room Mobile Services, LLC*, 529 B.R. 676, 691 (N.D. Tex. 2015) (citing *In re Apollo Molded Products, Inc.,* 83 B.R. 189, 191 (Bankr. D. Mass. 1988) (collecting cases)). Preserving the funds that could be used to satisfy a judgment rendered against the Coles

in the adversary proceeding, by ordering that the California case be dismissed, is consistent with the provisions of the Bankruptcy Code and helps preserve the estate.

Cole adds that he was surprised by the inclusion of the "with prejudice" language in the Bankruptcy Court's written order, *i.e.*, that the Coles must dismiss their California lawsuit "with prejudice," because the issue of prejudice was never discussed during the oral argument on the contempt motion. However, at the end of the oral argument, the Bankruptcy Court ordered Escrow of the West's attorney to draft a written order for the Bankruptcy Court's entry, and that Mobley, the Coles' California counsel, should be allowed to look at it before it was provided to the Bankruptcy Court. Bankr. Doc. 283, p. 46 of 48. There were no objections to this process and the Coles in fact proceeded to dismiss the California lawsuit with prejudice. Finally, Cole did not complain about the "with prejudice" language after receiving the Bankruptcy Court's order. The "with prejudice" issue is therefore moot.

E.     **Issue 7:  Whether Escrow of the West had standing to seek relief by way of a motion for a finding of substantial compliance in the adversary proceeding.**

Cole argues that Escrow of the West was essentially seeking declaratory relief by way of its motion for substantial compliance, so it should have been required to file its own adversary proceeding under Fed. R. Bankr. P. 7001(9). He argues that the rules associated with adversary proceedings, such as the requirement of a pleading including indispensable parties, were not followed. This argument was not raised until oral argument on Escrow of the West's motion. The Bankruptcy Court held it was waived, and that the Bankruptcy Rules probably did not require a new adversary proceeding in any event. Doc. 265, pp. 45-46. The issue lacks merit.

Rule 7001 lists types of proceedings that are considered adversary proceedings, such as proceedings to recover money or property, or obtain an injunction or other equitable relief, *see* subsections (1)-(8), as well as "a proceeding to determine a claim for declaratory judgment

relating to any of" the adversary proceedings listed, subsection (9). Cole does not cite any authority supporting his argument that Escrow of the West's motion for determination that it had complied with the Bankruptcy Court's orders constitutes a declaratory judgment for purposes of Rule 7001.

Even if it was, Rule 7001 is not jurisdictional. Parties may waive their right to an adversary proceeding with respect to a request for declaratory judgment that otherwise fell under Rule 7001. *Cogliano v. Anderson (In re Cogliano),* 355 B.R. 792, 806 (9th Cir. BAP 2006). The rule simply "requires an adversary proceeding, absent waiver or harmless error." *See also In re Porrett*, 547 B.R. 362, 365 (Bankr. D. Idaho 2016), *aff'd sub nom. In re: Porrett*, 2016 WL 4582043 (D. Idaho Sept. 1, 2016) (same). As the Bankruptcy Court noted here, this issue was never raised until oral argument, and it was therefore waived. In any event, Cole identifies no harmful error, let alone any error, that would have been avoided had Escrow of the West filed an adversary proceeding instead of its motion.

Issue 7 therefore lacks merit.

### F.        Issue 9:  The Bankruptcy Court's contempt finding.

Cole challenges the Bankruptcy Court's finding that he was in contempt for filing the California lawsuit.

A finding of contempt requires a showing of a specific and definite order, of which the party was aware, and that the party disobeyed the order. *Koehler v. Grant*, 213 B.R. 567, 570 (B.A.P. 8th Cir. 1997) (citations omitted). Here, the Bankruptcy Court concluded all three requirements were met:

> [A]fter I issue an order on December the 20th which says that if defendants claim that the funds should be used to pay their capital gain tax liability, they must submit a formal request to the Court for consideration asserting all the factual and legal bases for that

claim to which the Trustee will have the opportunity to respond.[14] After that date, I find that by filing the action in California on February 6, 2014, requesting in Count One precisely the determination this Court said could only be made here, the Coles and their counsel were in contempt of this Court's order, an order of which they were aware, an order which clearly required them to ask for this relief only in this Court and which they disobeyed by asking for that relief from the California court.

Bankr. Doc. 265, pp. 43-44.

Cole argues that the verbiage the Bankruptcy Court used at the time of entry of the TRO and the preliminary injunction order later changed. As noted, the December 2013 order expressly stated what the Coles *must* do, but they proceeded to file the California lawsuit two months later. An order that a party *must* follow a particular course of action necessarily precludes all other courses of action; the Bankruptcy Court did not need to detail every course of action Cole was precluded from taking in order for the December 2013 order to be clear. Whether the TRO and preliminary injunction verbiage changed in any substantive way, Cole knowingly violated the specific and definite language of the December 2013 order.

Having performed a searching review, *Indep. Fed'n of Flight Attendants,* 134 F.3d at 920, this Court discerns no abuse of discretion in the Bankruptcy Court's entry of the contempt order. Indeed, the Bankruptcy Court was measured under the circumstances.

Cole concludes by stating he was denied due process "and the Bankruptcy Court failed to

---

[14]        Specifically, the Bankruptcy Court stated in its December 20, 2013 Order:

> [I]f the Defendants claim that the Funds should be used to pay their capital gain tax liability, they must submit a formal request to the Court for consideration, asserting all the factual and legal bases for that claim, to which the Trustee will have the opportunity to respond. The Court will then decide the matter, holding a hearing, if necessary….

Bankr. Doc. 239, p. 4 (emphasis added).

resolve the evidence in [his] favor." Doc. 14, p. 22 of 23. Cole had notice and the opportunity to be heard, which is all that due process requires. Due process does not require that he succeed on his argument.

Issue 9 therefore lacks merit.

### G. Issue 4: Suggestion regarding a stay of appeal.

Cole suggests a stay of this appeal may be appropriate, pending further proceedings in the Bankruptcy Court. But the only issue he identifies as subject to further proceedings relates to the Coles' request for an order directing the payment of his taxes from the sale proceeds. The Bankruptcy Court ordered the Coles to file a motion if they wanted the taxes paid from the sale proceeds, and they appealed that order to this Court. Cole has not identified any pending proceedings that would merit a stay.

## III. Conclusion

Appellant Bruce Cole's motion for leave to adopt Appellant Nanette Cole's brief, Doc. 15, is granted. The Bankruptcy Court's orders are affirmed.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: January 3, 2017
Jefferson City, Missouri